No. 13-5649

## IN THE UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

## UNITED STATES OF AMERICA,

Appellee,

vs.

## MARQUIS DERON HEARD,

Appellant.

## Appeal from the United States District Court
## for the Eastern District of Kentucky

## INITIAL BRIEF OF APPELLANT

NEAL GARY ROSENSWEIG, P.A.
P.O. Box 814598
Hollywood, Florida 33081-4598
954-962-7720
Attorney for Appellant

## THIS CASE IS ENTITLED TO PREFERENCE
## (CRIMINAL APPEAL)

## SUMMARY OF THE CASE AND
## STATEMENT REGARDING ORAL ARGUMENT

Appellant, MARQUIS DERON HEARD, was indicted and charged with one count of conspiracy to distribute cocaine (Count 1), one count of distribution of cocaine (Count 2), one count of conspiracy to distribute cocaine base (Count 3), one count of possession with intent to distribute cocaine base (Count 4), one count of possession of a firearm by a convicted felon (Count 5), one count of conspiracy to knowingly launder proceeds of illegal drug activity (Count 6), five counts of money laundering designed to conceal the illegal nature of the proceeds of unlawful activity (Counts 7, 32-35), money laundering involving criminally-derived property greater than $ 10,000.00 (Count 8), and twenty-three counts of money laundering to avoid financial reporting requirements (Counts 9-31).     HEARD represented himself throughout the proceedings and was found guilty on all counts following a jury trial. Counts 3 and 8 were dismissed by the government.

The undersigned respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

i

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### UNITED STATES V. MARQUIS DERON HEARD

### No. 13-5649

Appellant files this Certificate of Interested Persons and Corporate Disclosure

Statement, listing the parties and entities interested in this appeal, as required by 6th

Cir. R. 26.1.

Butler, William M., Jr., Trial Counsel for Defendant

Caldwell, Karen K., United States District Chief Judge

Coffman, Jennifer B., United States District Judge, retired

Harvey, Kerry B., United States Attorney

Heard, Marquis Deron, Defendant/Appellant

Olinger, David Y., Jr., Assistant United States Attorney

Roberts, H. Wayne, Trial Counsel for Co-Defendant

Robinson, M. Stanford., U.S. Probation Officer

Rosensweig, Neal Gary, Esq., Appellate Counsel for Defendant/Appellant

Soltero-Baeza, Raul, Co-Defendant

Stephens, Andrew M., Trial Counsel for Defendant

Thompson, J. Hamilton, Assistant United States Attorney

ii

## **CERTIFICATE OF INTERESTED PERSONS**, continued

Wier, Robert E., United States Magistrate Judge

Wohlander, Mark, Witness Counsel, court-appointed

# TABLE OF CONTENTS

**Page(s)**

SUMMARY OF THE CASE AND STATEMENT
    REGARDING ORAL ARGUMENT      i
CERTIFICATE OF INTERESTED PERSONS      ii-iii
TABLE OF CONTENTS      iv
TABLE OF CITATIONS      v-vii
STATEMENT OF JURISDICTION      1
STATEMENT OF THE ISSUES      2
STATEMENT OF THE CASE      3-19
STATEMENT OF THE FACTS      20-23
SUMMARY OF THE ARGUMENT      24-25
ARGUMENT      26-56
    **I.    Allowing HEARD to stipulate to his own**
    **competence to stand trial deprived him of his**
    **constitutional right to a fair trial.**      26-34
    **II.    The district court committed plain error by**
    **finding that HEARD had voluntarily, knowingly and**
    **intelligently waived his right to counsel.**      34-56
CONCLUSION      57
CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B)
    AND SIXTH CIRCUIT LOCAL RULE 28(c)      57
DESIGNATION OF DISTRICT COURT RECORD      58-67
CERTIFICATE OF SERVICE      67

# **TABLE OF CITATIONS**

| **Cases** | **Page(s)** |
|---|---|
| Brewer v. Williams, 430 U.S. 387 (1977) | 35 |
| Drope v. Missouri, 420 U.S. 162 (1975) | 26, 32, 33, 49 |
| Dusky v. U.S., 362 U.S. 402 (1960) | 26 |
| Indiana v. Edwards, 554 U.S. 164 (2008) | 26-27, 31, 35, 41-42, 47 |
| Faretta v. California, 422 U.S. 806 (1975) | 34, 43 |
| Filiaggi v. Bagley, 445 F.3d 851 (6th Cir. 2006) | 26-27 |
| Godinez v. Moran, 509 U.S. 389 (1993) | 32 |
| Iowa v. Tovar, 541 U.S. 77 (2004) | 34, 44 |
| Johnson v Zerbst, 304 U.S. 458 (1938) | 44 |
| Martinez v. Court of Appeal of Cal., 528 U.S. 152 (2000) | 34 |
| Pate v. Robinson, 383 U.S. 375 (1966) | 33 |
| Sell v. U.S., 539 U.S. 166 (2003) | 34 |
| U.S. v. Carradine, 621 F.3d 575 (6th Cir. 2010), cert. denied, 131 S.Ct. 1706 (2011) | 46 |
| U.S. v. Colbert, 55 Fed.Appx. 225 (6th Cir. 2002), cert. denied, 537 U.S. 1211 (2003) | 32 |

| **Table of Citations, continued** | **Page(s)** |
|---|---|
| U.S. v. Duncan, 643 F.3d 1242 (9th Cir. 2011), cert. denied, 132 S.Ct. 1793 (2012) | 34 |
| U.S. v. Herrera-Martinez, 985 F.2d 298 (6th Cir. 1993) | 34, 48-49, 50 |
| U.S. v. Kidwell, 217 Fed.Appx. 441 (6th Cir.), cert. denied, 551 U.S. 1126 (2007) | 42-43 |
| U.S. v. McDowell, 814 F.2d 245 (6th Cir.), cert. denied, 484 U.S. 980 (1987) | 42, 47 |
| U.S. v. Piccolo, 723 F.2d 1234 (6th Cir. 1983) | 45 |
| U.S. v. Ross, 703 F.3d 856 (6th Cir. 2012) | 32, 42, 49 |
| Williams v. Bordenkircher, 696 F.2d 464 (6th Cir.), cert. denied sub nom. Williams v. Sowders, 461 U.S. 916 (1983) | 26 |

## Statutory and Other Authority

| | |
|---|---|
| U.S. CONST. amend. VI | 26, 34-35 |
| 18 U.S.C. § 922 | 4, 7 |
| 18 U.S.C. § 982 | 3, 4, 7 |
| 18 U.S.C. § 1956 | 3, 4, 7 |
| 18 U.S.C. § 1957 | 7 |
| 18 U.S.C. § 3231 | 1 |

**Table of Citations, continued**                                    **Page(s)**

18 U.S.C. § 3742                                                     1

18 U.S.C. § 4241                                                     32

21 U.S.C. § 841                                                     3, 4, 6

21 U.S.C. § 846                                                     3, 4, 6

21 U.S.C. § 851                                                     4

21 U.S.C. § 853                                                     3, 4, 7

28 U.S.C. § 1654                                                     34

28 U.S.C. § 1291                                                     1

28 U.S.C. § 2241                                                     45

Rule 32(a)(7)(B), F.R.A.P.                                           57

Sixth Circuit Local Rule 28(c)                                      57

Federal Rules of Evidence                                           43

Federal Rules of Criminal Procedure                                44

United States Sentencing Guidelines                                43

**BENCHBOOK FOR U.S. DISTRICT COURT JUDGES § 1.02**
    (5th ed. 2007)                                              42-44

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The statutory basis of appeal under which this Court has jurisdiction is 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. Notice of Appeal was timely filed on May 8, 2013 (Notice of Appeal, RE 219, Page ID # 693-695), from a judgment entered on May 6, 2013 (Judgment in a Criminal Case, RE 218, Page ID # 686-692).

# **STATEMENT OF THE ISSUES**

1.   Whether HEARD was competent to stand trial.

2.   Whether HEARD knowingly and intelligently waived his right to counsel and

to proceed without counsel.

## STATEMENT OF THE CASE

Appellant MARQUIS DERON HEARD was the defendant in the district court and will be referred to as "HEARD," "Appellant," or "Defendant." The appellee, The United States of America, will be referred to as "government." The record in the district court will be cited to by reference to the document title, record entry and page number ID #(s) of the Record on Appeal (i.e., Indictment, RE 1, Page ID # 1). The Presentence Investigation Report will be referred to as "PSR."

On June 2, 2011, MARQUIS DERON HEARD was indicted in U.S. District Court for the Eastern District of Kentucky and charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 1); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and conspiracy to knowingly launder proceeds of illegal drug activity, in violation of 18 U.S.C. § 1956(h) (Indictment, RE 1, Page ID # 1-6). The Indictment also contained forfeiture allegations pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982 (id.). HEARD was arrested and brought before the district court pursuant to an arrest warrant on June 7, 2011, and he made an initial appearance on June 8, 2011 (Arrest Warrant Returned Executed, RE 11, Page ID # 30; Minute Entry for Initial Appearance and Arraignment, RE 10, Page ID # 29).

A superseding indictment was filed on July 7, 2011, charging HEARD with

3

conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 1); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2); conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 3); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 4); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 5); and conspiracy to knowingly launder proceeds of illegal drug activity, in violation of 18 U.S.C. § 1956(h) (Count 6); the superseding indictment included the same forfeiture allegations as in the original indictment, and named as one of HEARD's co-conspirators, Raul Soltero-Baeza (Superseding Indictment, RE 13, Page ID # 48-56). HEARD entered a not guilty plea at his arraignment on July 15, 2011, and waived his right to a detention hearing generally (Minute Entry for Arraignment, RE 18, Page ID # 71).

On August 8, 2011, the government filed a notice, pursuant to 21 U.S.C. § 851 and 21 U.S.C. § 841(b)(1), that HEARD would be subject to enhanced penalties if convicted of any of the four counts of the superseding indictment (Notice by United States Regarding Enhanced Statutory Punishment, RE 25, Page ID # 104-105). On August 10, 2011, HEARD's retained counsel moved to withdraw, citing a conflict with HEARD (Motion to Withdraw, RE 26, Page ID # 106). The motion was granted on August 23, 2011, and HEARD was given time and the assistance of counsel to file

4

a financial affidavit showing his eligibility for appointed counsel, or otherwise to hire retained counsel (Order, RE 32, Page ID # 120-121). HEARD filed a partially-completed financial affidavit on August 12, 2011, which the Court deemed to be insufficient, and he was ordered on August 26, 2011, to retain new counsel within 20 days (Order, RE 33, Page ID # 122).

HEARD then filed a motion for bond on August 30, 2011 (Motion for Bond, RE 36, Page ID # 126); a motion to amend the original indictment and a motion to dismiss the original indictment on September 6, 2011 (Motion to Amend Indictment, RE 39, Page ID # 136; Motion to Dismiss, RE 40, Page ID # 139-140); a "Motion of Stay" on September 15, 2011 (Motion of Stay, RE 42, Page ID # 146-147); and an "Open Records Request" and a notice of appeal on September 22, 2011 (Open Records Request, RE 43, Page ID # 150; Notice of Appeal (Interlocutory), RE 44, Page ID # 155). The Notice of Appeal seems to have been filed for the purpose of challenging the facial legality of the original indictment (Notice of Appeal (Interlocutory), RE 44, Page ID # 155).

HEARD continued his *pro se* filings, first with a "Motion for Disclosure of Exculpatory" on October 4, 2011, in which he requested the disclosure of exculpatory evidence (Motion for Disclosure of Exculpatory, RE 45, Page ID # 158-159). On October 13, 2011, he filed a motion "to fix the defect on the face of original

5

indictment" on October 13, 2011 (Motion to Amend/Correct Indictment, RE 46, Page ID # 162-163); a Motion for Status (Motion for Status, RE 47, Page ID # 166-168); another motion "to fix the defect on the face of original indictment" (Motion to Amend/Correct Indictment, RE 48, Page ID # 171-172); and a notice withdrawing his appeal (Notice of Withdrawal of Appeal, RE 49, Page ID # 175).

HEARD filed a motion for writ of habeas corpus on October 26, 2011, again attacking the sufficiency of the original indictment (Motion for Writ of Habeas Corpus, RE 50, Page ID # 178-180); an information request on October 28, 2011, seeking the names of all clerks who filed information in the CM/ECF system (Information Request, RE 51, Page ID # 183). On October 31, 2011, the court issued an order requiring HEARD to file a motion to proceed in forma pauperis or pay the appellate filing fee, otherwise his interlocutory appeal might be dismissed (Order, RE 53, Page ID # 187-188). On November 1, 2011, the Sixth Circuit dismissed the appeal (Order, RE 55, Page ID # 192).

A Second Superseding Indictment was filed on November 3, 2011, charging HEARD with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 1); distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2); conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 3); possession with intent to distribute

6

cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 4); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 5); conspiracy to knowingly launder proceeds of illegal drug activity, in violation of 18 U.S.C. § 1956(h) (Count 6); money laundering designed to conceal the illegal nature of the proceeds of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(I) (Count 7); money laundering involving criminally-derived property greater than $ 10,000.00, in violation of 18 U.S.C. § 1957 (Count 8); twenty-three counts of money laundering to avoid financial reporting requirements, in violation of    18 U.S.C. § 1956(a)(1)(B)(ii) (Counts 9-31); and four additional counts of money laundering designed to conceal the illegal nature of the proceeds of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(I) (Counts 32-35) (Second Superseding Indictment, RE 57, Page ID # 195-207). The second superseding indictment included the same forfeiture allegations as in the original and superseding indictments, and again named HEARD's co-conspirator, Raul Soltero-Baeza (id.).

HEARD was arraigned on the second superseding indictment on November 4, 2011, at which time HEARD orally requested counsel (Minute Entry for Arraignment, RE 62, Page ID # 226). Counsel was appointed pending completion of a financial affidavit (Order, RE 66, Page ID # 230-231). HEARD's oral motion to continue the trial was also granted, and the district court denied all of HEARD's pending *pro se*

7

motions (id.). Notwithstanding the appointment of counsel, HEARD again filed a

motion "to fix defect on the face of the original indictment," this time on November

9, 2011 (Motion to Fix Defect on Face of Original Indictment, RE 68, Page ID # 233-

234). At a detention hearing held the same day, the court heard argument of counsel

for both sides and took the matter under advisement (Minute Entry for Detention

Hearing, RE 69, Page ID # 237). The court ordered HEARD held pending trial in an

order entered on November 10, 2011 (Detention Order Pending Trial, RE 70, Page

ID # 238-242). The court also denied HEARD's *pro se* motion to fix defect on the

face of the original indictment, because HEARD was now represented by counsel

(Order, RE 71, Page ID # 243).

HEARD continued his *pro se* assault on the original indictment, filing what

were deemed to be three motions, all denied because of HEARD's being represented

by counsel (Letter/Notice, RE 73, Page ID # 250; Notice, RE 74, Page ID # 253;

Motion for Correction of Clerical Errors on the Indictment, RE 75, Page ID # 256;

Order, RE 76, Page ID # 259). HEARD then filed a notice of appeal, challenging the

district court's denial of his prior *pro se* motions (Notice of Appeal (Interlocutory),

RE 84, Page ID # 280-281). HEARD's appointed counsel attempted to withdraw

(Motion to Withdraw as Attorney, RE 78, Page ID # 261-262). HEARD filed a

motion for a bill of particulars on November 23, 2011 (Motion for Bill of Particulars,

8

RE 79, Page ID # 264), a motion to be reindicted on the original charges (Motion to Be Re-Indicted on Original Charges, RE 80, Page ID # 267), a motion for disclosure of anything exculpatory (Motion for Disclosure of Anything Exculpatory, RE 81, Page ID # 270), a motion to grant *pro se* motions (Motion to Grant *Pro Se* Motions, RE 82, Page ID # 273), a notice to disclose information (Notice, RE 83, Page ID # 276-277), and a notice of filing his notice of appeal (Notice, RE 85, Page ID # 309). He added a motion for an evidentiary hearing on November 28, 2011 (Motion for Evidentiary Hearing, RE 86, Page ID # 312).

Meanwhile, the district court continued the trial until January 10, 2012 (Order, RE 87, Page ID # 315-316), and co-Defendant Soltero-Baeza renewed his motion for severance on November 29, 2011 (Motion to Sever Defendant, RE 88, Page ID # 317-319). On December 7, 2011, HEARD filed a *pro se* "motion of plea to the jurisdiction," seeking to quash the original indictment and any subsequent pleadings (Motion of Plea to the Jurisdiction, RE 90, Page ID # 322-324), a "writ of habeas corpus" on December 12, 2011 (Motion for Writ of Habeas Corpus, RE 91, Page ID # 327), and a notice concerning his attempt to secure the writ the same day (Notice, RE 92, Page ID # 330. The court denied all pending *pro se* motions and denied appointed counsel's motion to withdraw on December 13, 2011 (Order, RE 94, Page ID # 334). HEARD filed an information/records request the same day (Motion for

9

Information/Records Request, RE 95, Page ID # 336). Appointed counsel filed a motion for leave to seal a document (Sealed Motion for Leave to Seal a Document, RE 96, Page ID # 339), and the motion in question was ordered filed under seal on December 29, 2011 (Sealed Motion, RE 97, Page ID # 342-346; Order, RE 98, Page ID # 348). A few days later, the court denied co-Defendant Soltero-Baeza's renewed motion to sever (Order, RE 99, Page ID # 349).

The government obtained leave to file its response to the motion filed under seal by appointed counsel on January 3, 2012 (Sealed Motion for Leave to Seal a Document, RE 100, Page ID # 351; Sealed Document, RE 101, Page ID # 354; Order, RE 102, Page ID # 356; Sealed Response by USA, RE 103, Page ID # 357). HEARD was ordered committed to a facility to determine his mental competency in an order entered on January 6, 2012, and the trial was again continued (Order, RE 104, Page ID # 359-362; Order, RE 105, Page ID # 363-364). HEARD filed a notice, with an enclosed letter to the Inspector General stating that he would not subject himself to any competency examination (Response/Notice, RE 106, Page ID # 365-367).

On January 24, 2012, the Sixth Circuit entered its order dismissing HEARD's interlocutory appeal, stating that it was without jurisdiction to hear the matter (Order of Sixth Circuit, RE 107, Page ID # 370-371). HEARD again filed, *pro se*, what was described in the docket as a Notice of Filing Copies of a letter to counsel of record,

10

an Affidavit and Declaration by HEARD, and a Motion for Reconsideration to the

Sixth Circuit (Notice of Filing - Copies, RE 113, Page ID # 386-389). On February

13, 2012, he filed another Motion to Plea to the Jurisdiction challenging a lis pendens

allegedly recorded against certain property, and seeking to have the case dismissed

(Motion to Plea to the Jurisdiction, RE 118, Page ID # 396). The motion was denied

on February 21, 2012 (Order, RE 119, Page ID # 398). He filed an affidavit on

March 7, 2012 (Affidavit, RE 120, Page ID # 399). The Sixth Circuit denied his

motion for reconsideration on March 23, 2012 (Order of Sixth Circuit, RE 121, Page

ID # 401). HEARD then field a public "notice" concerning his arrest (Notice, RE

122, Page ID # 403).

On May 1, 2012, a competency hearing was held (Minute Entry for

Competency Hearing, RE 127, Page ID # 419; Order, RE 129, Page ID # 421-423).

HEARD expressed a desire to proceed *pro se*, and he was permitted to represent

himself and to stipulate to his competency (id.). Appointed counsel was relieved of

further responsibilities, but was required to remain as appointed legal advisor (id.).

Trial was scheduled for July 23, 2012 (id.).

HEARD filed a letter to the clerk on May 7, 2012, requesting copies of various

documents (Letter from M. Heard, RE 130, Page ID # 430). He then filed another

motion to dismiss on May 15, 2012, this time for lack of subject matter jurisdiction

11

(Motion to Dismiss, RE 131, Page ID # 425). The same day, he also filed a "motion to resubmit," styled as a Motion for Reconsideration, asking to be able to re-file various of his previous *pro se* motions (Motion for Reconsideration/Styled as Motion to Resubmit, RE 132, Page ID # 427). This motion was granted with respect to his earlier motion for disclosure of exculpatory evidence, and denied with respect to everything else (Order, RE 136, Page ID # 434-435). On May 22, 2012, HEARD filed a motion requesting "defense aid," which asked for the detention facility's aid and assistance as he prepared for trial (Motion Request for Court Order Defense Aid, RE 137, Page ID # 440), a motion to compel the discovery [production] of evidence (Motion to Compel, RE 138, Page ID # 442), a motion for a more definite statement (Motion for a More Definite Statement, RE 139, Page ID # 445-446), and a notice that he "would like to issue notice to his challenge to the grand jury" (Notice, RE 140, Page ID # 448).

On May 29, 2012, HEARD filed another notice, this one concerning a previously submitted affidavit (Notice, RE 142, Page ID # 453), a motion to strike "any scandalous matter from the original pleading in this matter" (Motion to Strike, RE 143, Page ID # 455-456), a reply to the government's response to his motion to dismiss (Reply to Response, RE 144, Page ID # 458-459), and a motion for "judgment on the pleadings" (Motion for Judgment, RE 145, Page ID # 460). On

12

May 30, 2012, the district court issued an order denying three of HEARD's motions (RE 137, RE 138, RE 140), and deeming his notice of wanting to challenge the grand jury (RE 140) not to be a motion (Order, RE 146, Page ID # 462-464). His legal advisor and former court-appointed counsel filed a Notice of Compliance on May 31, 2012, which stated that all materials he was required to deliver to HEARD had been delivered to the detention facility (Notice of Compliance, RE 147, Page ID # 465). The district court issued another order on June 1, 2012, denying HEARD's other pending motions (Order, RE 148, Page ID # 466).

On June 5, 2012, HEARD filed a notice of appeal directed at the May 30, 2012, order (Notice of Appeal (Interlocutory), RE 149, Page ID # 468), and on the same day, the district court denied his motion to dismiss (Order, RE 150, Page ID # 471), and accepted his notice of appeal without the need to pay a filing fee (Order, RE 151, Page ID # 472-473). HEARD filed a notice withdrawing his notice of appeal on June 7, 2012 (Notice, RE 152, Page ID # 474), but on June 18, 2012, he filed another notice of appeal, this time to challenge the district court's order of June 1, 2012, which disposed of three of HEARD's other motions (Notice of Appeal, RE 153, Page ID # 476). The trial was again continued by the district court, pending the outcome of the appeal(s) (Order, RE 155, Page ID # 480-481). Notwithstanding HEARD's withdrawal of his notice of one of the appeals on June 7, 2012, the Sixth Circuit

13

issued an opinion on September 13, 2012, dismissing both appeals for lack of
jurisdiction, stating that interlocutory appeals in criminal cases are not permitted
(Order of the Sixth Circuit, RE 156, Page ID # 482-483). The mandate issued on
October 2, 2012 (Mandate of USCA, RE 157, Page ID # 486).

On October 3, 2012, he district court ordered the trial to commence on
December 3, 2012 (Order, RE 158, Page ID # 487-488). The Sixth Circuit, however,
apparently having received a motion for reconsideration from HEARD, recalled its
mandate on October 19, 2012, to consider that motion (Order of the Sixth Circuit, RE
159, Page ID # 489), and then denied his motion in an order entered on November 21,
2012 (Order of the Sixth Circuit, RE 160, Page ID # 491).

On November 26, 2012, HEARD's appointed legal advisor/standby counsel
filed a letter he wrote to HEARD, advising HEARD of what counsel's responsibilities
were as stand-by counsel in *pro se* cases, inquiring as to whether HEARD was
prepared to go to trial as scheduled or whether he would wish to file a motion for
continuance, and informing HEARD that the district judge was scheduled to retire in
early January, 2013 (Notice of Filing, RE 161, Page ID # 493-495). Appointed legal
advisor/standby counsel filed a motion to set a hearing on whether HEARD intended
to try his case *pro se*, and whether the district court had jurisdiction to hear the case
in light of the lack of a mandate from the Sixth Circuit following its reconsideration

14

of HEARD's interlocutory appeal(s) (Motion to Set Hearing, RE 162, Page ID # 496-497). The district court granted the motion and set a hearing on November 28, 2012 (Order, RE 163, Page ID # 499). The government responded the same day that the district court lacked jurisdiction (Response to Order by USA, RE 164, Page ID # 500-503); court-appointed standby counsel responded to the government (Response to Order by M. Heard, RE 165, Page ID # 504-505); and HEARD wrote a letter to the clerk stating that he wanted no further continuances (Letter, RE 166, Page ID # 506). HEARD then followed his letter the same day with a motion for an evidentiary hearing (Motion for Evidentiary Hearing, RE 167, Page ID # 509).

The Sixth Circuit issued its mandate on November 29, 2012, presumably resolving any issue concerning the district court' s jurisdiction (Mandate of USCA, RE 168, Page ID # 512). At a hearing the same day, the district court denied HEARD's motion for an evidentiary hearing as having been withdrawn, canceled the December 3, 2012, trial date, and ordered a hearing to set a new trial schedule (Minute Entry for Motion Hearing, RE 169, Page ID # 514515; Order, RE 170, Page ID # 516). On December 3, 2012, a telephonic status conference was held, with the court contacting HEARD at the detention facility (Minute Entry for Telephonic Status Conference, RE 171, Page ID # 517-518). The trial was re-scheduled for January 7, 2013, and HEARD's oral motion for exculpatory evidence was denied because the

15

government represented that it possessed no such evidence (id.). The matter was transferred to U.S. District Judge Caldwell for reassignment on December 3, 2012 (id.). HEARD wrote two more letters to the clerk on December 10, 2012, requesting a copy of the response to his request for exculpatory evidence and four transcripts (Letter, RE 173, Page ID # 522; Letter, RE 174, Page ID # 526). The clerk informed HEARD of the receipt of his letters on December 13, 2012, and provided him with the court reporters' contact information for obtaining transcripts, plus the cost of obtaining a copy of the response to his request for exculpatory evidence (Response letter from Clerk, RE 173-2, Page ID # 525; Response letter from Clerk, RE 174-2, Page ID # 529). The government filed a notice, also on December 13, 2012, detailing its attempts to provide discovery, including an attempt to hand-deliver a 673-page package of materials to HEARD, and HEARD's refusal to sign for the package (Notice of Filing Regarding Actual and Attempted Discovery, RE 172, Page ID # 519-521). The court filed a notice and order on December 18, 2012, notifying the parties that the case had been assigned to Judge Caldwell, and that the trial remained scheduled for January 7, 2013 (Notice and Order, RE 175, Page ID # 531). On December 21, 2012, the court issued an order scheduling a pretrial conference for January 7, 2013, rescheduling trial for January 8, 2013, and denying HEARD's Information/Records Request (RE 95) as moot (Order, RE 177, Page ID # 533). On

16

January 2, 2013, HEARD moved to withdraw his information/records request, and stated in the motion that he had all the discovery he needed (Motion for Withdrawal of Request, RE 179, Page ID # 535-536). Standby counsel filed a notice of compliance, representing that he had complied with the court's order to deliver copies of the court's order regarding civilian clothing for HEARD at trial, and also representing that he was attempting to assist HEARD with various trial-related matters and the review of discovery; two letters from standby counsel to HEARD were attached to the notice (Notice of Compliance with Order, RE 180, Page ID # 538-541).

A pretrial conference was held on January 7, 2012, at which time HEARD was again deemed to be competent to stand trial, and at which time HEARD waived his right to counsel (Minute Entry for Pretrial Conference, RE 184, Page ID # 555-556). The court explained what the parties could expect for the trial process (id.). The court issued two orders prior to the commencement of trial the next day; the first denying HEARD's Information/Records Request as moot, denying his motion to dismiss the indictment, and ruling that HEARD would be given the grand jury testimony of witnesses after they testified at trial (Order, RE 185, Page ID # 557-558), and the second denying HEARD's request for a laptop during trial (Opinion and Order, RE 186, Page ID # 559-560). The court also denied HEARD's requests for law books,

17

a laptop computer, and increased telephone access, and a jury was empaneled and sworn (Minute Entry for Jury Trial, RE 187, Page ID # 561).

Following three days of testimony, the government dismissed Counts 3 and 8 on January 10, 2013 (Minute Entry for Jury Trial, RE 188, Page ID # 562), and HEARD was found guilty of all remaining counts on January 11, 2013, after approximately two hours of jury deliberation (Amended Minute Entry for Jury Trial, RE 192, Page ID # 607). HEARD requested that the court sentence him immediately, a request which was denied by the court; a presentence investigation and report was ordered prepared expeditiously (Order, RE 201, Page ID # 624-625). On January 22, 2013, HEARD filed a motion for a new trial (Motion for New Trial, RE 204, Page ID # 632-633), a motion for acquittal (Motion for Acquittal, RE 205, Page ID # 638-639), and a Motion/Information Request as to whether judicial notice was taken at trial (Motion/Information Request Regarding Judicial Notice, RE 206, Page ID # 642). The district court, on January 24, 2013, issued an order describing various motions made by HEARD during trial, and the court's rationale for granting or denying them (Order, RE 208, Page ID # 651-658).

The government moved for a preliminary order of forfeiture, which was granted, and a Preliminary Judgment of Forfeiture was entered (Motion for Preliminary Order of Forfeiture, RE 207, Page ID # 645-649; Order, RE 211, Page

18

ID # 666; Preliminary Judgment of Forfeiture, RE 213, Page ID # 672-674). HEARD filed a motion for order to plea of jurisdiction on February 4, 2013 (Motion for Order to Plea of Jurisdiction, RE 209, Page ID # 659-660). HEARD then wrote a letter to the clerk, stating that he did not wish to have standby counsel present at any meeting involving the preparation of the PSR, and that if standby counsel was made to attend such a meeting, that HEARD would not attend (Waiver of Standby Counsel at Presentence Report, RE 210, Page ID # 663). On March 29, 2013, the district court issued an order denying all pending motions except for HEARD's motion regarding judicial notice; the district court stated that it did not take judicial notice of any fact at trial (Opinion and Order, RE 215, Page ID # 677-683).

On May 2, 2013, the district court sentenced HEARD to a total of 360 months imprisonment: 30-year terms each for Counts 1, 2 and 4, 120 months on Count 5, 240 months each on Counts 6, 7, 9-35, all to run concurrently with each other; a term of supervised release of 10 years on Count 1; and special assessments of $ 100.00 each on all counts (Minute Entry of Sentencing, RE 216, Page ID # 684; Judgment in a Criminal Case, RE 218, Page ID # 686-692; Transcript of Sentencing, RE 235, Page ID # 2446-2448). HEARD timely filed his Notice of Appeal on May 8, 2013 (Notice of Appeal, RE 219, Page ID # 693-695), and he remains incarcerated pending this appeal.

19

## STATEMENT OF THE FACTS

At trial, cooperating witness Victor Hernandez Alcantara testified that he had known HEARD since 2008; that he had been introduced to HEARD by Manuel Escalera; that Escalera had instructed Alcantara on selling kilogram quantities of cocaine to HEARD; that he had taken delivery of more than five kilograms of cocaine and had sold it to HEARD; and that HEARD had traveled to Mexico at least once to visit Escalera and HEARD's alleged Mexican sources of cocaine (Transcript of Trial, Vol. 2, RE 231, Page ID # 1900-1940).

Cooperating witness Demarcus Lewis testified that he had known HEARD since childhood; had bought cocaine from HEARD, once a month, in half-ounce and ounce quantities over a significant period of time; and that he assisted law enforcement in the recording of phone calls between himself and HEARD (id., Page ID # 1868-1873). Lewis and Detective Richard Qualls, of the Versailles, Kentucky, police department, testified to the planning for, and completion of a controlled buy of nine ounces of cocaine for $ 9,000.00 by Lewis from HEARD on February 28, 2011, at a nightclub in Lexington, Kentucky (id., Page ID # 1866-1885; Transcript of Trial, Vol. 1A, RE 229, Page ID # 1764-1767).

Detective Qualls testified that on June 7, 2011, he and other officers executed several search warrants at storage lockers belonging to HEARD and at the residences

20

of HEARD and his mother (Transcript of Trial, Vol. 1A, RE 229, Page ID # 1771-1777). According to Qualls and Special Agent Brian Grove of the IRS, the search of HEARD's home produced approximately 100 grams of cocaine base, together with a kilogram cocaine press, two firearms (one loaded), scales and a money counter (id; Transcript of Trial, Vol. 2, RE 231, Page ID # 2016-2017, 2019). A third firearm was recovered from one of the storage lockers (Transcript of Trial, Vol. 3, RE 232, Page ID # 2160).

Special Agent Danielle Barto, of the Internal Revenue Services's Criminal Division, testified that HEARD had previously been convicted in 2003 of trafficking in a controlled substance, a felony, and a certified copy of the judgment and sentence of conviction were introduced as evidence (Transcript of Trial, Vol. 3, RE 232, Page ID # 2110-2116; PSR at 19).

Frank Poschinger, III, a Louisville financial consultant and real estate investor, testified that HEARD approached him about purchasing a home Poschinger had for sale, under a lease-to-purchase arrangement (id., Page ID # 2087-2088). Poschinger stated that the agreed sale price was $ 182,600.00, and that over time, HEARD made payments, all in cash, and all under $ 10,000.00, totaling $ 179,100.00 towards the purchase (id., Page ID # 2089-2093). Exhibits summarizing the payments were introduced into evidence (id., Page ID # 2093-2096; 2220-2223). Special Agent

21

Brian Grove, a money laundering specialist for the IRS, testified that the search of HEARD's residence turned up a Currency Transactions Report and Cash Purchases of Negotiable Instruments brochure from the National Association for Banking Security (Transcript of Trial, Vol. 2, RE 231, Page ID # 2021-2024). Found in HEARD's bedroom, the brochure contained information about the federal reporting requirement for cash transactions of $ 10,000.00 or more (id.).

Agent Barto testified that by keeping the property in Poschinger's name until paid in full, and then transferring title to HEARD with a nominal value of one dollar, that it was HEARD's intention of concealing the actual amount of the purchase from law enforcement, and therefore, constituted money laundering (Transcript of Trial, Vol. 3, RE 231, Page ID # 2128-2129). Barto also testified that HEARD, in recorded conversations with Demarcus Lewis, had instructed Lewis on how to launder drug proceeds through the purchase of real estate in precisely this fashion; her testimony was corroborated by Lewis's own testimony (id., Page ID # 2122-2124-52; Transcript of Trial, Vol. 2, RE 231, Page ID # 1884-1891). Detectives Qualls and David Straub, also of the Lexington Police Department, testified that during months of surveillance of HEARD, they had never seen HEARD travel to a place of employment (Transcript of Trial, Vol. 1A, RE 229, Page ID # 1723-1724, 1741-1742).

David Rivard, owner of a Lexington jewelry store, testified that an individual

22

using the name, "Ricky Sanders," paid a total of $ 49,422.00 in cash for four items of custom jewelry, and he identified HEARD as "Ricky Sanders"(Transcript of Trial, Vol. 3, RE 232, Page ID # 2098-2106).

## SUMMARY OF THE ARGUMENT

Appellant MARQUIS DERON HEARD was initially defended by retained counsel in the proceedings in district court. After retained counsel was permitted to withdraw, HEARD had counsel appointed for him. Shortly after the appointment, however, defense counsel moved the district court for an evaluation of HEARD's competence to stand trial, and alleged in the motion that the government, case agents, investigators and other attorneys who knew him had concluded that he was unable to assist in his defense. Following an evaluation by government mental health practitioners, who concluded that HEARD was capable of assisting his defense, notwithstanding evidence that he suffered from personality disorder, narcissism, and paranoia, the district court ordered a hearing on the issue of competency. HEARD refused to discuss the mental health report with counsel, and he indicated to the district court that he wished to represent himself. However, rather than first determining whether HEARD was competent to stand trial, the district court determined that HEARD would be allowed to represent himself. The district court then permitted HEARD to stipulate to his own competency to stand trial, without holding an actual hearing on the matter. The district court failed to conduct a meaningful inquiry into HEARD's competence to stand trial, and it failed to conduct the inquiry required in this Circuit to determine whether HEARD should be permitted

24

to represent himself.  Such failures constitute plain error.

Finally, the undersigned respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

## ARGUMENT

**I.** **Allowing HEARD to waive his right to an actual hearing to determine his competence to stand trial deprived him of his constitutional right to a fair trial.**

"[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'" Indiana v. Edwards, 554 U.S. 164, 170 (2008) (citing Dusky v. U.S., 362 U.S. 402 (1960) and Drope v. Missouri, 420 U.S. 162, 171 (1975)). "Dusky defines the competency standard as including both (1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability *to consult with his lawyer* with a reasonable degree of rational understanding.'" "Drope repeats that standard, stating that it 'has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, *to consult with counsel, and to assist in preparing his defense* may not be subjected to a trial.'" Edwards, 554 at 170) (emphasis in original) (internal quotations omitted). "On review, this court must determine whether a reasonable judge, situated as was the trial judge, should have doubted the defendant's competency." See Williams v. Bordenkircher, 696 F.2d 464, 467 (6th Cir.), cert. denied sub nom. Williams v. Sowders, 461 U.S. 916 (1983); see also Filiaggi v.

Bagley, 445 F.3d 851, 859 (6ᵗʰ Cir. 2006).

In Edwards, a state court defendant was convicted by a jury of attempted murder and battery with a deadly weapon (id. at 164). The trial court found Edwards competent to stand trial, but not competent to represent himself at trial (id. at 167). The Supreme Court held that it was constitutionally permissible for Indiana to require that Edwards be represented by counsel under these circumstances (id. at 178). The Court held that there was one standard for determining a defendant's competency to stand trial, and a second, higher standard for determining whether that same defendant is competent to conduct trial proceedings by himself (id. at 172-78). In the case at bar, it is questionable whether HEARD's mental competency met either standard.

HEARD was formally appointed counsel, Mr. Andrew Stephens, on November 15, 2011 (CJA Appointment of Counsel, RE 77, Page ID # 260). Stephens had been conditionally appointed three months earlier, pending the filing of a financial affidavit and other matters, when HEARD's retained counsel was permitted to withdraw (Order, RE 32, Page ID # 120-121). By December 27, 2011, however, Mr. Stephens filed a motion to have HEARD's mental competency determined (Motion for Determination of Mental Competency, RE 97 (Sealed), Page ID # 342-346). The motion alleged that persons closely associated with the case, including prosecutors,

27

case agents, investigators and other attorneys familiar with HEARD, had concluded that he was unable to assist in his defense (id., Page ID # 345). The subsequent report, while acknowledging that HEARD presented with features of narcissistic, paranoid and antisocial personality disorders, nevertheless concluded that he was competent to stand trial and to assist counsel with his defense (Sealed Forensic Report, RE 124, Page Id # 410, 414-416). The report also noted that HEARD's cognitive and intellectual functioning lay in the "average" range (id., Page ID # 410).

The district court purported to hold a hearing on HEARD's competency on May 1, 2012 (Transcript of Competency Hearing, RE 240, Page ID # 2512-2560). Attorney Stephens represented to the Court that there was animosity between himself and HEARD, that the marshals were concerned for Stephens' safety, and that he had not spoken with HEARD about the competency evaluation (id., Page ID # 2514-2516, 2521). This exchange followed:

> THE COURT: Okay. Mr. Heard, would you stand, please? Mr. Heard, would you stand, please?
> DEFENDANT HEARD: You talking to me?
> THE COURT: Yes. Mr. Heard, Andy Stephens represents you in this case, and he needs to talk to you. Are you willing to talk to him?
> DEFENDANT HEARD: If he has a problem with the jurisdiction, Your Honor, I'm --
> THE COURT: I'm sorry, I can't hear you. What did you say?
> DEFENDANT HEARD: I said, if he has a problem with the jurisdiction, I'm going to waive my rights.
> THE COURT: Okay. I don't really exactly understand what you're

28

saying, so let me ask you this question, and I want you to answer this question. Are you willing to talk to him today about this competency report; yes or no?

DEFENDANT HEARD: Your Honor, I don't want to speak with Mr. Stephens.

THE COURT: Well, do you want him to continue to represent you and to address this competency report?

DEFENDANT HEARD: If he's put in my plea – papers, since I'm unable to assist him, then that's fine.

Other than that, I want to waive my rights to counsel.

THE COURT: And you think you want to represent
yourself?

DEFENDANT HEARD: I have no other choice.

THE COURT: Well, you have plenty of choices. I want to ask you, do you believe you can represent yourself?

DEFENDANT HEARD: I have no other choice.

THE COURT: That's a yes or no question. Are you able to represent yourself?

DEFENDANT HEARD: Well --

THE COURT: Yes or no?

DEFENDANT HEARD: I can't answer that right now.

THE COURT: Well --

DEFENDANT HEARD: Your question --

THE COURT: -- I'm going to -- I can't hear the first part of what you're saying, but apparently there's something you want him to do that you think he's not

doing. Mr. Stephens, what is it he's talking about?

MR. STEPHENS: Your Honor please, he has asked and demanded, and I think filed his own motions, to challenge the Court's jurisdiction over this case.

THE COURT: And as you know, the Court has jurisdiction over this case.

MR. STEPHENS: I don't think --

THE COURT: There is really no question, is there?

MR. STEPHENS: Really no question about that.

THE COURT: All right.

MR. STEPHENS: He's also very concerned about my disclosing the

29

discovery on the superseding portion of the case because he doesn't think that the underlying case from which this indictment was superseded is relevant to him, and he couldn't be more wrong about that. And so -- and I -- I tried to explain to him, and as I understand my obligation, is to file motions that are relevant to the facts and the law of this case --

THE COURT: Right.

MR. STEPHENS: -- as I see it. I cannot say that the motions that he has asked me to file are relevant to anything. You clearly have jurisdiction over this case. I have looked at the conduct of the grand jury and the presentation of this case for an indictment and a superseding indictment. I don't see anything that is violative of any rule. The government has the right to supersede it whether --

THE COURT: Yeah.

MR. STEPHENS: -- he wants to accept that --

THE COURT: Yeah.

MR. STEPHENS: -- or not. And I think I also have a calling and an obligation to the Court to deal with pleadings that I believe are correct under Rule 11, and that's my obligation

(id., Page ID # 2516-2519). After a brief recess, Stephens reported to the Court that

HEARD remained unwilling to discuss the report, and that HEARD maintained that

as long as Stephens had not filed HEARD's "motion for jurisdiction," there was

nothing to discuss (id., Page ID # 2522).

There was ample reason to doubt HEARD's competence. Defense counsel

moved the court for an evaluation of HEARD's competence to stand trial based upon

his own opinion and the opinions of prosecutors, case agents, investigators and others

who knew HEARD. The evaluation report stated that HEARD suffered from certain

mental defects, including personality disorder with exhibited features of narcissistic,

30

paranoid and antisocial behavior, and that he irrationally believed that the district judge and court-appointed counsel were conspiring against him. Other facts already in evidence added to doubts about HEARD's competence. He had made threats against his attorney to the extent that the marshals were concerned for his attorney's safety. He persisted in his irrational belief that he should be released because the original indictment was defective, and that the court lacked jurisdiction over him. He refused to consult with counsel about the competency report or anything else unless counsel filed his motion challenging the court's jurisdiction over him. Of course, the fact that a defendant is unwilling to consult with or to assist counsel in the preparation of his defense is not probative of whether he has the ability to do so. But in HEARD's case, the reason he was unwilling to assist counsel or even consult with him was based upon extremely irrational beliefs HEARD held with respect to the indictments and the court's jurisdiction, and he was unable to let go of these beliefs. In Edwards, there was expert testimony of a similar inability to assist counsel:

> Edwards' counsel presented further psychiatric and neuropsychological evidence showing that Edwards was suffering from serious thinking difficulties and delusions. A testifying psychiatrist reported that Edwards could understand the charge against him, but he was "unable to cooperate with his attorney in his defense because of his schizophrenic illness"; "[h]is delusions and his marked difficulties in thinking make it impossible for him to cooperate with his attorney"

554 U.S. at 168. "[E]vidence of a defendant's irrational behavior, his demeanor at

31

trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient." Drope, 420 U.S., at 180. Evidence of this nature was already present in the instant case. Aside from the mental competency evaluation, which reported manifestations of various forms of mental defect, HEARD's extreme irrational beliefs regarding the validity of the original indictment, the court's jurisdiction, and that the judge and appointed counsel were conspiring against him, made it impossible for him to assist in, let alone consult with, counsel.

"When there is reason to doubt the defendant's competence, a court should make a competency determination before finding the waiver [of counsel] to be valid." U.S. v. Ross, 703 F.3d 856,867 (6th Cir. 2012) (citing U.S. v. Colbert, 55 Fed.Appx. 225, 230 (6th Cir. 2002), cert. denied, 537 U.S. 1211 (2003)) (citing Godinez v. Moran, 509 U.S. 389, 400-01, 402 n. 13 (1993)); see also 18 U.S.C. § 4241. Here, however, the district court put the cart before the horse, by first allowing HEARD to represent himself at trial, and then purporting to make a determination as to whether HEARD was competent to stand trial at all. The procedure employed to determine his competence to stand trial was, to say the least, brief:

THE COURT:   Now, the first thing we need to do is to have a

32

competency hearing. Do you want -- I have scheduled that hearing for today. There is a report that says you are competent to stand trial. Do you challenge that, or do you want to

stipulate that you are, in fact, competent to stand trial?

DEFENDANT HEARD: I am competent.

THE COURT: Okay. The defendant has said he is competent to stand trial. And so do I understand you to waive or give up your right to a competency hearing?

DEFENDANT HEARD: Waive or give up my right to a competency?

THE COURT: You have said you're competent. Does that mean you are -- you don't want a hearing on this? You want to go on and get a trial date?

DEFENDANT HEARD: I want to go on and get a trial date.

THE COURT: Okay. So you don't want a competency hearing?

DEFENDANT HEARD: I don't need one.

THE COURT: Okay. All right. The defendant has stipulated to his competency

(Transcript of Competency Hearing, RE 240, Page ID # 2535-2536).

Allowing HEARD to waive his right to an actual hearing to determine his competence to stand trial deprived him of his constitutional right to a fair trial, for "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." Pate v. Robinson, 383 U.S. 375, 384 (1966). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope, 420 U.S. at 172 (citing Pate, supra, at 385). Even if reasonable minds could disagree on a defendant's competence, if the evidence creates a reasonable doubt about a

33

defendant's competence, a full competency hearing is required. See U.S. v. Duncan, 643 F.3d 1242, 1249 (9th Cir. 2011), cert. denied, 132 S.Ct. 1793 (2012). However, even if the district court had properly determined that HEARD was competent to stand trial, that determination would not have been conclusive as to whether he was competent to waive his right to counsel. See U.S. v. Herrera-Martinez, 985 F.2d 298, 302 (6th Cir. 1993).

## II.   Whether HEARD was competent to waive his right to counsel and to conduct trial proceedings without counsel.

"The Sixth Amendment guarantees criminal defendants both the right to trial counsel and the right to proceed without counsel. Faretta v. California, 422 U.S. 806, 834 (1975). The Constitution requires that a waiver of the right to counsel be knowing, voluntary, and intelligent." Iowa v. Tovar, 541 U.S. 77, 87-88 (2004). The right to self-representation in a criminal trial is also codified by statute, 28 U.S.C. § 1654, but it is not absolute. "The government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." Martinez v. Court of Appeal of Cal., 528 U.S. 152, 162 (2000); see also Sell v. U.S., 539 U.S. 166, 180 (2003) ("[T]he government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one").

34

"[C]ourts must entertain every reasonable presumption against waiver." Brewer v. Williams, 430 U.S. 387, 404 (1977). The Constitution permits the denial of the right to self-representation when a defendant has been determined to be competent to stand trial with the assistance of counsel, but who is not competent to waive counsel and conduct trial proceedings by himself. See Edwards, 554 U.S. 164, at 178. When there is a question as to whether a defendant is competent to stand trial, meaning that he has a present ability to consult with his lawyer, a capacity ... to consult with counsel, and an ability to assist counsel in preparing his defense, and the defendant also wishes to waive his right to counsel and to conduct trial proceedings himself, two separate inquiries of competence must be made: one to determine the defendant's competency to stand trial with the assistance of counsel, and one to determine the defendants's competence to conduct trial proceedings by himself. Id. at 174-178.

As previously noted, the district court permitted HEARD to represent himself before finding him competent to stand trial:

THE COURT: All right. Let me just ask him a few questions.
MR. STEPHENS: Okay.
THE COURT: Mr. Heard, would you stand, please? Mr. Heard, do you want Mr. Stephens to continue to represent you?
DEFENDANT HEARD: No. I waive my rights to counsel.
THE COURT: And do you understand really the full consequences --
DEFENDANT HEARD: Yes.
THE COURT: -- of representing yourself?
DEFENDANT HEARD: It don't -- it ain't going to matter.

THE COURT: I'm sorry, I can't hear you.

DEFENDANT HEARD: Yeah, I understand.

THE COURT: Okay. Bring him to the podium, if you would. I'm asking the marshals to bring Mr. Heard around to the podium because I cannot hear him. Mr. Heard, I didn't hear what you just said.

DEFENDANT HEARD: I said, yes, I'm going to waive my rights to counsel. I understand clearly, Your Honor.

THE COURT: Okay. All right. Let me just go through a few things, because I have to be sure that you really do fully understand this decision that you want to go and represent yourself. And so do you understand that when you say you waive your rights to counsel, that that means that you would be representing yourself?

DEFENDANT HEARD: Yes.

THE COURT: Do you understand that Mr. Stephens -- I would probably keep Mr. Stephens on as a legal advisor, but that he would not be representing you. Do you understand that?

DEFENDANT HEARD: Yes.

THE COURT: Do you understand that -- and I want to go through these charges just a bit, if I could. Do you understand that in Count 1 of the superseding indictment it is charged -- a drug conspiracy is charged, and it's charged that you, between September 2008 and May 2011, conspired with others to knowingly and intentionally distribute five kilos or more of cocaine? Do you understand that's the charge against you in Count 1?

DEFENDANT HEARD: Okay, yeah.

THE COURT: I'm sorry?

DEFENDANT HEARD: Yes.

THE COURT: Yes. Do you understand that in Count 2 it is charged that you did distribute cocaine on February 28th, 2011, in Fayette County, Kentucky? Do you understand that's the charge in Count 2?

DEFENDANT HEARD: Yes.

THE COURT: Do you understand that Count -- the Count 3 is another drug conspiracy charge, specifically a crack cocaine conspiracy, charging that between May 2011 and June 7, 2011, that you conspired with others to knowingly and intentionally distribute 28 grams or more of crack cocaine? Do you understand that's the charge in Count 3?

DEFENDANT HEARD: I don't -- I didn't understand that. When I first

36

read it, it was money laundering.

THE COURT: Count 3 in the superseding indictment is a crack cocaine conspiracy.

Do you understand that?

DEFENDANT HEARD: Oh, in the superseding? I thought it -- it's a bunch of issues I don't understand with that, Your Honor. I'm going to have to go over it and review it.

THE COURT: Do you -- do you understand that the notion of a superseding indictment means that that indictment replaces the others, and so you would be tried on the second superseding indictment? Do you understand that?

DEFENDANT HEARD: Yeah, that's fine.

THE COURT: Do you understand that Count 3 charges you with conspiracy to distribute crack cocaine?

DEFENDANT HEARD: I have to review it.

THE COURT: I'm sorry?

DEFENDANT HEARD: I have to review it.

THE COURT: So you did not know that before you waived your rights to counsel?

DEFENDANT HEARD: I didn't know how you can – can replace the charges. Even though it's on the original indictment, how you can just throw the original charges away?

THE COURT: Well, Mr. Heard, you're demonstrating something that's of real concern to me, and that is that if you have a lawyer, the lawyer understands that the United States can seek and the grand jury can issue a second superseding indictment that supersedes, transcends, replaces, the other indictments. Do you understand that now?

DEFENDANT HEARD: I understand that, yeah.

THE COURT: And so do you understand that if we have a trial, you will be charged, you will be tried – you've already been charged. You will be tried on every single count in the second superseding indictment?

DEFENDANT HEARD: That's fine.

THE COURT: All right. And I want you to understand that Count 3 is a charge that you engaged in a crack cocaine conspiracy to distribute 28 grams or more of crack cocaine. Do you understand that?

DEFENDANT HEARD: I mean, I have to review it. I have to see it.

THE COURT: Have you not reviewed the superseding indictment?

37

DEFENDANT HEARD: I want to review the original and the superseding. I want all the -- I want to waive my rights to counsel. I will review everything later.

THE COURT: All right. So you're saying that you have not yet reviewed the second superseding indictment but you want to later?

DEFENDANT HEARD: I want to waive my rights to counsel and review discovery, everything.

THE COURT: Okay. All right. Let me just go on then. Count 4 charges that in June of 2011 that you did knowingly and intentionally possess with the intent to distribute 28 grams of crack cocaine. Count 5 says that on the same date, June 7, 2011, you knowingly possessed three firearms, and they're described here, although, you had earlier been convicted of a felony. Count 6 -- excuse me, is a money laundering count, I guess. Right, Mr. West?

MR. WEST: My understanding, yes, Your Honor.

THE COURT: Count 6 is a money laundering count. It says that between 2008 and May 2011, you conspired with other people to get controlled substances, to take the proceeds from selling those controlled substances, and conspire with others to conduct financial transactions involving that. Count 7 is also a money laundering count. Is that right, Mr. West?

MR. WEST: Also my understanding, yes, Your Honor.

THE COURT: Okay. Why don't you -- why don't you describe the allegations of this indictment just in summary form?

MR. WEST: Your Honor, I was not provided a copy of that. If I can have a copy, I can describe to the defendant.

THE COURT: Okay. So that I don't go through -- this is a second superseding indictment. And so that I don't go through it in sort of a laborious form. Actually, I have -- I do have a summary sheet right here. All right. Mr. -- I'll take that back, Joe.

Count 6 and Count 7, Mr. Heard, are money laundering counts. And Count 8 in the second superseding indictment is engaging in monetary transactions engaging in -- affecting interstate commerce. Counts 9 through 31 are money laundering counts.

Counts 32 through 35 are money laundering counts. Is that your understanding, Mr. West?

MR. WEST: It is, Your Honor. It was an extended money laundering

investigation --

THE COURT: Okay.

MR. WEST: -- involving drug proceeds and the investment in some real property in Louisville.

THE COURT: Okay. These are very serious and complex allegations, Mr. Heard. After hearing just a summary of these allegations, are you quite sure you don't want an attorney to represent you in this case?

DEFENDANT HEARD: I waive my rights to counsel.

THE COURT: Okay. Have you ever had any legal training at all?

DEFENDANT HEARD: Nope.

THE COURT: Have you ever represented yourself in any criminal proceeding?

DEFENDANT HEARD: I'm trying to now.

THE COURT: Have you ever represented yourself in any criminal proceeding; yes or no?

DEFENDANT HEARD: No.

THE COURT: Do you understand that if you are convicted on one or more of these counts, you may go to prison?

DEFENDANT HEARD: Yeah.

THE COURT: Do you understand that the prison terms you are looking at may be lengthy?

DEFENDANT HEARD: Yeah, they're life, I know.

THE COURT: Pardon me?

DEFENDANT HEARD: Life, I know.

THE COURT: Okay. And so you understand that you may be looking at life in prison?

DEFENDANT HEARD: Yes.

THE COURT: Are you quite sure given the penalty if you are convicted, that you don't want an attorney to represent you?

DEFENDANT HEARD: I'm going to waive my rights to counsel.

THE COURT: I'm just going to keep asking you some questions. Do you understand that if -- that if you're in trial, that the United States will be presenting its witnesses against you, and that it will question those witnesses and that you would have to cross-examine those witnesses?

DEFENDANT HEARD: That's fine.

THE COURT: And have you ever done that before?

DEFENDANT HEARD: No.

THE COURT: Do understand that an attorney who is representing you would have the advantage of legal training and experience and could understand what issues are important and what issues are not important and what to emphasize and what not to emphasize?

DEFENDANT HEARD: I want to waive my rights to counsel.

THE COURT: But do you understand that you would be at a tremendous disadvantage if you don't have a lawyer?

DEFENDANT HEARD: Yes.

THE COURT: Okay. All right. Well, do you understand that if you do this in these complex charges, that you're going to be kind of going it alone in an area where highly specialized, professional training would be desired?

DEFENDANT HEARD: I mean, it's doing me no good anyway, Your Honor, so I'm ready.

THE COURT: And so do I understand you to say that you do understand you would be out there by yourself without a lawyer, except as an advisor?

DEFENDANT HEARD: Yeah. He's no good to me anyway, Your Honor. So, I mean, I would rather go by myself.

THE COURT: Well, you know, I will tell you this, that your attempts to insult Mr. Stephens are probably falling on deaf ears, because he is a highly trained attorney, he is experienced, and he has had several federal criminal trials. And I don't know whether he's -- well, I know he's represented people in drug cases, and I don't know about his specific experience, but he has a lot of experience in federal criminal cases, both in negotiating pleas and in trying cases and representing people at sentencings, and so he is a very experienced lawyer. Do you understand that?

DEFENDANT HEARD: Yes.

THE COURT: And do you understand that his statement to you that there's really no basis to challenge either the ability of the United States to get a second superseding indictment or to challenge the Court's jurisdiction in cases like this, do you understand that those decisions are based on his legal counsel and legal training and legal experience?

DEFENDANT HEARD: I disagree, but I understand.

THE COURT: Okay. All right. And do you understand that Mr. Stephens may, if you cooperate with him, may be able to see defenses

40

that you hadn't thought of and may be able to pierce through some of these allegations in ways that don't even occur to you?

DEFENDANT HEARD: I mean, I wish he would -- we could kind of expedite it because, I mean, I'm really sick of being in jail, and I feel like that we got a chance of winning; but if he can't, then I want to waive my rights to counsel.

THE COURT: Do you understand that he may be able to see defenses that you don't see; yes or no?

DEFENDANT HEARD: No.

THE COURT: You don't understand that he may be able to see something you don't see because of his legal experience?

DEFENDANT HEARD: I mean, maybe. I can't answer yes or no to that.

THE COURT: Okay. Well, it's true. He may be able to see certain things you don't see. He may be able to help you call witnesses. He may be able to say to you maybe you should negotiate a favorable plea agreement. He may -- he may be able to look at this case in a way that you cannot see. And I will tell you that my advice to you

professionally is that you would be better advised to have an attorney represent you in this case. Do you understand that I'm giving you that advice?

DEFENDANT HEARD: Yes.

THE COURT: Okay. Do you have any doubt that you want to go it alone without an attorney to represent you?

DEFENDANT HEARD: Yes.

THE COURT: You do have a doubt?

DEFENDANT HEARD: No, I don't. I want to go it alone.

THE COURT: Okay. And you're quite sure of that?

DEFENDANT HEARD: Yes.

THE COURT: Okay. All right. I am going to allow you to represent yourself

(Transcript of Competency Hearing, RE 240, Page ID # 2523-2535).

The Edwards Court rejected Indiana's request "to adopt, as a measure of a defendant's ability to conduct a trial, a more specific standard that would 'deny a

41

criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or a jury.'" Id. at 178. Instead, the Court endorsed giving trial judges the authority to assess a particular defendant's competence to conduct trial proceedings, because the trial judge will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." Id. at 177-78. In U.S. v. McDowell, 814 F.2d 245 (6th Cir.), cert. denied, 484 U.S. 980 (1987), this Court invoked its supervisory powers over the lower federal courts in setting forth the standard inquiry for district courts to follow in determining whether a defendant's waiver of the right to counsel is knowing and intelligent, citing the model inquiry set forth in the Bench Book for United States District Judges."[1] :

> In the future, whenever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself

Id. at 250. See also Ross, supra, 703 F.3d at 867. The Court, in Ross, however, stated that "[e]ven if the model inquiry is followed, the waiver of counsel must be made knowingly and intelligently." Id. (citing U.S. v. Kidwell, 217 Fed.Appx. 441,

---

[1]BENCHBOOK FOR U.S. DISTRICT COURT JUDGES § 1.02 (5th ed. 2007).

445-46 (6th Cir.), cert. denied, 551 U.S. 1126 (2007)) (quoting Faretta v. California, 422 U.S. 806 (1975)).

The Model Inquiry's questions, those asked of HEARD and those omitted, and HEARD's answers, revealed that not only was the procedure lacking, but that HEARD was incompetent to represent himself.   To the questions actually asked, HEARD responded that he had had no legal training (Question 1), and that he had never represented himself in a criminal proceeding before (Question 2); that he understood the charges and penalties if he were convicted (Questions 3-4); that he understood that if he chose to represent himself, he would be on his own (Question 7); that in light of the possible penalties and the difficulties in representing himself, he still wished to do so (Question 13); and that his decision was voluntary (Question 14) (Transcript of Competency Hearing, RE 240, Page ID # 2524-2535).  The court advised HEARD that it was the court's opinion that he would be better off if he were defended by counsel (Question 13) (Transcript of Competency Hearing, RE 240, Page ID # 2524-2535).

The district court failed to ask whether HEARD understood that the court could impose consecutive sentences (Question 5); failed to ask if he understood the existence of, and the effect the Sentencing Guidelines might have on his sentence (Question 6); failed to ask if he was familiar with the Federal Rules of Evidence

43

(Question 8); failed to ask if he understood that the rules of evidence governed what evidence could be introduced at trial, and that they would apply to him (Question 9); and failed to ask if he was familiar with the Federal Rules of Criminal Procedure, how they govern the conduct of a criminal trial, or that he would be required to follow them (Questions 10-11) (id.).

The district court failed to comply substantially with the model inquiry, and even if there was substantial compliance, HEARD's decision was not intelligent. Merely asking the questions in the Model Inquiry does not aid in the determination. The answers themselves are important, as are a number of other factors, including a defendant's ability or inability to communicate coherently with judge and jury. "The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Iowa v. Tovar, supra, 541 U.S. at 88 (citing Johnson v Zerbst, 304 U.S. 458, 464 (1938)). Here, HEARD had had no legal training and had not represented himself before. He had no familiarity with the rules of evidence or procedure. His statement, that he understood that a superseding indictment replaces previous indictments (id., Page ID # 2526-2527), appears to have been made simply to appease the court, because he later stated that he did not

44

understand how the original charges could be replaced, and that he did not agree with attorney Stephens on this issue (id., Page ID # 2526-27, 2533). Because he steadfastly believed that the government was required to name his co-conspirators in the original indictment, he clearly did not understand the charges against him. He was unable to say whether or not he understood that Stephens' training and experience as a criminal trial lawyer might enable Stephens to see things that HEARD could not see (id., Page ID # 2531-2534).

HEARD's self-representation was marked by the filing of more than 50 *pro se* pretrial motions, notices, and letters, nearly all of which were rambling, nonsensical and largely unintelligible. More importantly, they were all legally insufficient so as to provide him any relief. His first motion, for pretrial release, rested on the grounds that his co-conspirators had not been arrested, and that he needed an opportunity to retain counsel (Motion for Bond, RE 36, Page ID # 126). Above all, however, HEARD was, and remains, fixated in his belief that because no other individuals were named in the original indictment, the conspiracy charges were invalid in the original and superseding indictments. Of course, it is not necessary that a defendant's co-conspirators be named in an indictment. See U.S. v. Piccolo, 723 F.2d 1234, 1239 (6th Cir. 1983).

When HEARD's attempts to dismiss the indictments failed, he resorted to filing

45

interlocutory appeals in this Court; all of them were resolved against him without ever reaching the merits of his claims (6th Cir. No. 11-6188, dismissed by HEARD voluntarily; 6th Cir. No. 11-6446, dismissed for lack of appellate jurisdiction; 6th Cir. No. 12-5492, affirmed the district court's judgment that HEARD's habeas (§ 2241) petition should be dismissed because it was premature due to his failure to exhaust available remedies, such as a trial on the merits or other procedures available to him; 6th Cir. Nos. 12-5657 and 12-5706, both appeals dismissed for lack of jurisdiction because generally, interlocutory appeals are not permitted in criminal cases; 6th Cir. No. 13-5241, affirmed the district court's judgment that HEARD's second 2241 petition was premature, as he had not yet been sentenced at the time the petition was filed, and because he had not yet appealed his conviction and sentence). HEARD's motions and failed attempts on appeal provide further evidence that he lacked even a basic knowledge or understanding of criminal procedure and substance, and that he was unable to communicate his thoughts in a meaningful way. See U.S. v. Carradine, 621 F.3d 575, 577-79 (6th Cir. 2010), cert. denied, 131 S.Ct. 1706 (2011)(holding that the district court's denial of defendant's request to represent himself, based upon its conclusions that defendant was "not familiar with the law, [] not familiar with the [c]ourt procedure, [and] not familiar with the rules of evidence," and therefore "not competent to represent himself," was not an abuse of the district court's discretion).

46

In Edwards, the Supreme Court reprinted, in the Appendix to its opinion, one of Edwards' district court filings, entitled, "Defendant's Version of the Instant Offense," which he had attached to his Presentence Investigation Report. 554 U.S. at 179. The document was a rambling, incoherent statement which meant nothing, legally or otherwise. The Court obviously believed that it was important to include the document as an example of Edwards' inability to intelligently waive his right to counsel or to communicate in a meaningful way with the trial court. HEARD's filings, most of which attacked the indictments and the court's jurisdiction, were similar in nature, and they represented overwhelming evidence of HEARD's abject lack of knowledge of the legal procedures and substance he would be required to possess in order to represent himself. At trial, all he wanted to do was get it over with, because he was convinced that this Court had given him encouraging signals that it would agree on appeal with his arguments that the government could not supersede the original indictment and that the district court lacked jurisdiction to try him. He demonstrated that he had no understanding of basic legal principles or of the substantive charges, the elements to be proved, or the burdens of proof.

In McDowell, McDowell's competence, either to stand trial, or to represent himself, was not seriously disputed. He "had a high school education, was literate, was fully fluent in the English language, and had no apparent physical or

47

psychological disabilities." 814 F.2d at 250-251. He read transcripts of grand jury testimony, conducted cross-examination of witnesses, and testified himself, with stand-by counsel conducting the examination. Id. at 248. In the case at bar, HEARD possesses a GED, but he cannot be said to be literate or fully fluent in the English language. And while he conducted cross-examination of some of the witnesses himself, virtually all of it was ineffectual. Most of his questions attacked the indictments, the ruse used by law enforcement to draw him outside of his home so a search warrant could be executed, and the lack of video or other evidence to support the testimony of witnesses against him; all in the mistaken belief that such evidence was required to convict him.

In Herrera-Martinez,, this Court held that the district court failed to make an express finding that Ms. Herrera-Martinez knowingly and voluntarily waived her right to counsel, and, in addition, failed to state its specific findings of fact and conclusions of law regarding her statements and behavior at trial; therefore, this Court was unable to determine from the record whether Herrera-Martinez knowingly and voluntarily waived her right to counsel. 985 F.2d at 301-302. Such failures constituted plain error. Id. at 302. Herrera-Martinez's conduct was admittedly bizarre. Her responses to the district court's questions were laced with profanity and obscenity, and she had to be removed from the courtroom. Id. at 300-302. She had

48

never been to school, was difficult for the court to understand, even with a translator, and the facts strongly suggested that she was incompetent to waive counsel. Id. at 302. HEARD's conduct, by comparison, was respectful, and he did not disrupt the proceedings, but he nonetheless demonstrated his inability to intelligently waive his right to counsel. The district court in the instant case committed the same procedural omissions as in Herrera-Martinez, and likewise committed plain error, although plain error has not been determined to be the standard of appellate review in this Circuit.[2]

At the time of the district court's decision to permit him to waive counsel, HEARD's decision cannot have been deemed "intelligent." But as the district court was authorized to revisit its decision at any subsequent time, and as HEARD's conduct subsequent to the court's initial determination provided a multitude of additional evidence that he was incapable of representing himself, the district court should have stepped in and put an end to HEARD's self-representation. See Ross, 703 F.3d at 869 (quoting Drope for the proposition that "a finding of competency at one point in the proceedings may be overcome later by further evidence that a defendant is not competent").

HEARD continued to file unintelligible motions and other papers attacking the

---

[2]

See Ross, 703 F.3d at 867 ("This Court has not clearly identified the appropriate standard of review for a trial court's decision to allow waiver of counsel").

49

original indictment and the government's ability to supersede the original indictment. At the pretrial conference on January 7, 2013, Chief Judge Caldwell, who had taken over for Judge Coffman, wanted to make the record clear that HEARD was waiving his right to counsel, and that he was competent to proceed to trial (Transcript of Pretrial Conference, RE 228, Page ID # 1626-1627). Attorney Stephens provided the court with a summary of his representation, including his reasons for seeking a determination of HEARD's competency, and of HEARD's refusal to seek advice from him (id., Page ID # 1627-1629). Attorney Stephens concluded that there was nothing to support a challenge to the competency study or to Judge Coffman's finding that HEARD was competent to stand trial and to waive his right [to counsel] (id., Page ID # 1628-1629).

Chief Judge Caldwell cited the competency evaluation report in support of the Judge Coffman's finding that HEARD was competent to waive his right to counsel, also finding that HEARD's competency was supported by other sufficient evidence (id., Page ID # 1629-1630). As previously noted, however, because the competency standards for standing trial and for self-representation are different, the competency study cited by Judge Caldwell is inconclusive in determining whether HEARD was competent to waive his right to counsel. See Herrera-Martinez, 985 F.2d at 302. HEARD stated that he was not legally qualified to go toe-to-toe with the prosecutor,

50

but that he had no choice but to represent himself, a statement made without any explanation for it (id., Page ID # 1631). HEARD then rambled on about his habeas petitions and about wanting to get the trial over and to have the Court of Appeals "sort through the problems I am having" (id., Page ID # 1631-1632). He continued to be ignorant of the criminal nature of the proceedings, as opposed to a civil matter (id., Page ID # 1632). After the district court briefed HEARD and the government on the court's trial procedures, HEARD stated the following:

> MR. HEARD: Your Honor, I probably -- I probably won't be asking any questions. I won't be probably doing a lot of cross-examining. My mission is probably to expedite the trial. I mean, once I get found guilty I will be filing a notice of appeal immediately after, one minute after. Because, you know, like I said, I just want to be able to cover the merits before we even go into the trial.
>
> I mean, there's no way you can prove conspiracy on me when I was indicted on June 2, 2011, on criminal charges. I mean, I just can't see it. So I'm willing to take it on the head. I guess I have to just accept it. I'm representing myself *pro se*, and I'm willing to move forward

(id., Page ID # 1648). The court explained HEARD's right to a Rule 29 motion, his opportunity to have the court dismiss any charges not proven by the government; HEARD's response was, "I won't be asking that, Your Honor" (id., Page ID # 1649). The government again addressed the ongoing problem of HEARD's obsession with the original indictment:

> MR. THOMPSON: Yes, your Honor. Just -- just to clarify something that was just -- an issue that was just raised by Mr. Heard.

THE COURT: Okay.

MR. THOMPSON: In the past he referenced the July indictment -- June indictment. There was actually -- there was actually in this case an original indictment and a superseding indictment, and that's separate -- excuse me, and a second superseding indictment. And of course, your Honor, that's -- those are the charges that we will be moving forward with.

THE COURT: You are proceeding on 11-73, the second superseding indictment?

MR. THOMPSON: Yes, your Honor.

THE COURT: Mr. Heard, have you been provided with a copy of the second superseding indictment that was filed in November of 2011?

MR. HEARD: Yes, your Honor. What I will be arguing is fruit of the poisonous tree to the Court of Appeals, and so I'm not going, you know, to even address any of it. Because, you know, once I said the merits of my petition, the habeas corpus falls under that statute. And I just want to be able to expedite the trial so we can get to the appeal process

(id., Page ID # 1649-1650).    HEARD continued to exhibit his total lack of

knowledge or understanding of the procedural and substantive issues to be tried:

MR. HEARD: Also, one more question, your Honor. Are we still going to be covering the trial on my petition for habeas corpus? Because that's never been addressed in no court whatsoever. I mean, they've been ignoring it. I'm not sure why, but, you know, I've never had a response. And, I mean, these allegations I've made have never been addressed. I want to be sure. The Court of Appeals said in the mandate that I should have a trial on the merits on the procedures that are, you know, available for me to be able to address my allegations. I mean, I have never had them addressed.

I want to be sure. The Court of Appeals said in the mandate that I should have a trial on the merits on the procedures that, you know, are available for me to be able to address my allegations. I mean, I have never had them addressed

(id., Page ID # 1655-1656). Neither the court nor the prosecutor understood what he

was saying (id., Page ID # 1656). When asked if he had street clothes for trial,

HEARD stated that he preferred to wear his prison jumpsuit (id., Page ID # 1659).

His reasoning:

> MR. HEARD: Yes, I do, your Honor. I believe with the record, it reflects itself. I mean, it's pretty much a no-brainer. And at the end of the day, I mean the see-saw is lop-sided already, anyway, so I feel like there's no reason for me to really worry about minuscule problems. What I wear tomorrow really won't matter. I feel like a guilty plea will -- a guilty verdict will be reached and that I will have to file a notice of appeal immediately. I mean, that's my option, that's what I've already, you know, got in my head. So I'm pretty much prepared for the worst

(id., Page ID # 1661). HEARD then again moved to dismiss, again based upon

the alleged defect in the original indictment (id., Page ID # 1662-1663). The

government responded, and HEARD replied:

> MR. HEARD: Yes, your Honor, if I may. I mean, this is going to be a waste of the Court's time. I mean, I'm almost absolutely sure that the Court of Appeals will be able to see my argument. It may take some time. I'm pretty sure it will.
>
> I mean, I've already prepared myself to maybe, you know, sit in jail for a year or two. As you can see as of my juvenile record, I'm really not that new to jail, so that's not going to be a problem.
>
> But at the end of the day, just wasting judicial resources, which they told me I should not do and Mr. Thompson should not do as a professional, you will note -- understand a conspiracy requires two people. I mean, even in "Webster's Dictionary," even a little kid knows this.
>
> So at the end of the day, there are a few issues that have not really been addressed by the Court. As I stated, June the 2nd, 2011, as also reflected in my docket, there was never any complaint, there was never any second defendant.

And just listing no one, others, I mean, it really doesn't have anyone, which basically was the burden of this indictment.

So it will come up later, and this will be an issue to where, I mean, I'm not sure if I have to go as far as an extreme to go to certiorari. But, I mean, it's common sense, basically.

And it would be a waste of your time to try something which is, like I say, easy that a caveman could figure it out. So I really want you to try to consider it and maybe make a ruling on my motion as soon as possible, please

(id., Page ID # 1664-1665). The court took the matter under advisement, but

eventually denied the motion (id., Page ID # 1663, 1665-1666).

HEARD tried another way to dismiss the indictment, again displaying a

complete and abject lack of understanding of criminal procedure:

MR. HEARD: That's fine, your Honor. I have one more oral motion.
THE COURT: You may.
MR. HEARD: It would be concerning the jurisdiction of this case, which I want to go ahead and get that understood for the record, also.
THE COURT: You may.
MR. HEARD: Based on 12(b), because of the fact that this indictment was basically a Rubik's cube to be able to formulate an indictment citing 12(b). Pretrial motions, I'm not sure exactly where to find it right off the top, because it's going to take me a couple of seconds. But at the end of the day, this is actually what gave the prosecution jurisdiction over this case, and if you could rule on it I'm pretty sure you'll say "Dismissed." But I want to get all of these things noted for the record on my part, because I am making an attempt to try to get this resolved beforehand and so I have an alternative.

\*\*\*

MR. HEARD: Right. Well, it states in a lot of financial charges that they are charging me with, property that I bought in Louisville. So, I mean,

54

I'm really not even sure where to go with that. As far as the jurisdictional part of the personal jurisdictional subject matter, like I say, at the end of the day it still kind of falls where this indictment was birthed and kind of made up -- constructed, if you will -- from a number of charges that were bare-boned. And I'm not sure if this is how they intercepted authority over this case. But it would, like I say, almost be, you know, fall under the fruit of the poisonous tree to supersede it 20 times; I mean, if you wanted to, you could. But I mean, still, kinda like why would you do it if the first was really no good? But, I mean, if that's the Court's decision to allow it, I mean, I'm ready to proceed tomorrow

(id., Page ID # 1666-1667, 1669). The court also denied this motion (id., Page ID # 1670). The prosecutor advised the court that he had not had an opportunity to discuss a plea agreement with HEARD, and he requested to do so (id., Page ID # 1681). HEARD's response was that there would be no deal unless there was a dismissal (id., Page ID # 1682).

On the first day of trial, HEARD requested a civil law book and a laptop computer, and stated that he was familiar with how to do legal research (Transcript of Trial, Vol. 1A, RE 229, Page ID # 1684-1685). He then asked if it was too late for a suppression hearing, but he was unable to articulate what evidence he wished to suppress, other than mentioning the indictment again (id., Page ID # 1685-1686). Voir dire began, and, during a recess, the court again addressed HEARD's decision to represent himself, finding that he had made an intelligent and knowing decision (Transcript of Trial, Vol. 1B, RE 230, Page ID # 1846). But as the Chief Judge's

55

affirmations of the initial determinations of HEARD's competence to stand trial and to waive counsel added nothing to the initial determinations themselves, they were ineffective procedurally and substantively.

The district court's initial determinations of HEARD's competence to stand trial, and of his competence to waive his right to counsel, were procedurally insufficient and were unsupported by the evidence before the district court. These determinations deprived HEARD of his constitutional right to a fair trial, and they cannot be upheld by this Court.

## CONCLUSION

Based upon the foregoing, Appellant respectfully requests that this Court vacate the judgment and conviction and remand the case to the district court, with instructions that the government may re-try him within a reasonable time, but only after a proper determination of HEARD's competence to stand trial and to waive counsel; otherwise, he should be released.

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B), (c), AND SIXTH CIRCUIT LOCAL RULE 28(c)

This brief complies with the type-volume limitation contained in Rule 32(a)(7)(B), Federal Rules of Appellate Procedure and Sixth Circuit Local Rule 28(c), in that it contains 13,907 words, and was created using Corel® WordPerfect 12©, version 12.0.0.602, using Times New Roman font, size 14.

57

# DESIGNATION OF DISTRICT COURT RECORD

| Record Entry | Document/Date/Page ID #(s) | Cited On Page(s) |
|---|---|---|
| RE 1 | Indictment, Page ID # 1-6 | 3 |
| RE 10 | Minute Entry for Initial Appearance and Arraignment, Page ID # 29 | 3 |
| RE 11 | Arrest Warrant Returned Executed, Page ID # 30 | 3 |
| RE 13 | Superseding Indictment, Page ID # 48-56 | 3-4 |
| RE 18 | Minute Entry for Arraignment, Page ID # 71 | 4 |
| RE 25 | Notice by United States Regarding Enhanced Statutory Punishment, Page ID # 104-105 | 4 |
| RE 26 | Motion to Withdraw, Page ID # 106 | 4 |
| RE 32 | Order, Page ID # 120-121 | 4-5, 27 |
| RE 33 | Order, Page ID # 122 | 5 |
| RE 36 | Motion for Bond, Page ID # 126 | 5, 45 |
| RE 39 | Motion to Amend Indictment, Page ID # 136 | 5 |
| RE 40 | Motion to Dismiss, Page ID # 139-140 | 5 |
| RE 42 | Motion of Stay, Page ID # 146-147 | 5 |
| RE 43 | Open Records Request, Page ID # 150 | 5 |
| RE 44 | Notice of Appeal (Interlocutory), Page ID # 155 | 5 |

## DESIGNATION OF DISTRICT COURT RECORD, Continued   Page(s)

| RE 45 | Motion for Disclosure of Exculpatory, Page ID # 158-159 | 5 |
| RE 46 | Motion to Amend/Correct Indictment, Page ID # 162-163 | 5-6 |
| RE 47 | Motion for Status, Page ID # 166-168 | 6 |
| RE 48 | Motion to Amend/Correct Indictment, Page ID # 171-172 | 6 |
| RE 49 | Notice of Withdrawal of Appeal, Page ID # 175 | 6 |
| RE 50 | Motion for Writ of Habeas Corpus, Page ID # 178-180 | 6 |
| RE 51 | Information Request, Page ID # 183 | 6 |
| RE 53 | Order, Page ID # 187-188 | 6 |
| RE 55 | Order, Page ID # 192 | 6 |
| RE 57 | Second Superseding Indictment, Page ID # 195-207 | 6-7 |
| RE 62 | Minute Entry for Arraignment, Page ID # 226 | 7 |
| RE 66 | Order, Page ID # 230-231 | 7-8 |
| RE 68 | Motion to Fix Defect on Face of Original Indictment, Page ID # 233-234 | 8 |
| RE 69 | Minute Entry for Detention Hearing, Page ID # 237 | 8 |
| RE 70 | Detention Order Pending Trial, Page ID # 238-242 | 8 |

## DESIGNATION OF DISTRICT COURT RECORD, Continued   Page(s)

| RE 71 | Order, Page ID # 243 | 8 |
|---|---|---|
| RE 73 | Letter/Notice, Page ID # 250 | 8 |
| RE 74 | Notice, Page ID # 253 | 8 |
| RE 75 | Motion for Correction of Clerical Errors on the Indictment, Page ID # 256 | 8 |
| RE 76 | Order, Page ID # 259 | 8 |
| RE 77 | CJA Appointment of Counsel, Page ID # 260 | 27 |
| RE 78 | Motion to Withdraw as Attorney, Page ID # 261-262 | 8 |
| RE 79 | Motion for Bill of Particulars, Page ID # 264 | 8-9 |
| RE 80 | Motion to Be Re-Indicted on Original Charges, Page ID # 267 | 9 |
| RE 81 | Motion for Disclosure of Anything Exculpatory, Page ID # 270 | 9 |
| RE 82 | Motion to Grant *Pro Se* Motions, Page ID # 273 | 9 |
| RE 83 | Notice, Page ID # 276-277 | 9 |
| RE 84 | Notice of Appeal (Interlocutory), Page ID # 280-281 | 8 |
| RE 85 | Notice, Page ID # 309 | 9 |
| RE 86 | Motion for Evidentiary Hearing, Page ID # 312 | 9 |
| RE 87 | Order, Page ID # 315-316 | 9 |

**DESIGNATION OF DISTRICT COURT RECORD, Continued**   **Page(s)**

| | | |
|---|---|---|
| RE 88 | Motion to Sever Defendant, Page ID # 317-319 | 9 |
| RE 90 | Motion of Plea to the Jurisdiction, Page ID # 322-324 | 9 |
| RE 91 | Motion for Writ of Habeas Corpus, Page ID # 327 | 9 |
| RE 92 | Notice, Page ID # 330 | 9 |
| RE 94 | Order, Page ID # 334-335 | 9 |
| RE 95 | Motion for Information/Records Request, Page ID # 336 | 9-10 |
| RE 96 | Sealed Motion for Leave to Seal a Document, Page ID # 339-340 | 10 |
| RE 97 | Motion for Determination of Mental Competency, (Sealed), Page ID # 342-346 | 10, 27 |
| RE 98 | Order, Page ID # 348 | 10 |
| RE 99 | Order, Page ID # 349-350 | 10 |
| RE 100 | Sealed Motion for Leave to Seal a Document, Page ID # 351-352 | 10 |
| RE 101 | Sealed Document, Page ID # 354-355 | 10 |
| RE 102 | Order, Page ID # 356 | 10 |
| RE 103 | Sealed Response by USA, Page ID # 357-358 | 10 |
| RE 104 | Order, Page ID # 359-362 | 10 |
| RE 105 | Order, Page ID # 363-364 | 10 |

## DESIGNATION OF DISTRICT COURT RECORD, Continued    Page(s)

| RE 106 | Response/Notice, Page ID # 365 | 10 |
|--------|--------------------------------|-----|
| RE 107 | Order of the Sixth Circuit, Page ID # 370-371 | 10 |
| RE 113 | Notice of Filing - Copies, Page ID # 386-389 | 10-11 |
| RE 118 | Motion to Plea to the Jurisdiction, Page ID # 396 | 11 |
| RE 119 | Order, Page ID # 398 | 11 |
| RE 120 | Affidavit, Page ID # 399 | 11 |
| RE 121 | Order of the Sixth Circuit, Page ID # 401 | 11 |
| RE 122 | Notice, Page ID # 403 | 11 |
| RE 124 | Sealed Forensic Report, Page Id # 406-416 | 27-28, 30 |
| RE 127 | Minute Entry for Competency Hearing, Page ID # 419 | 11 |
| RE 129 | Order, Page ID # 421-423 | 11 |
| RE 130 | Letter from M. Heard, Page ID # 430 | 11 |
| RE 131 | Motion to Dismiss, Page ID # 425 | 11-12 |
| RE 132 | Motion for Reconsideration/Styled as Motion to Resubmit, Page ID # 427 | 12 |
| RE 136 | Order, Page ID # 434-435 | 12 |
| RE 137 | Motion Request for Court Order Defense Aid, Page ID # 440 | 12 |
| RE 138 | Motion to Compel, Page ID # 442-443 | 12 |

## DESIGNATION OF DISTRICT COURT RECORD, Continued   Page(s)

| RE 139 | Motion for a More Definite Statement, Page ID # 445-446 | 12 |
| RE 140 | Notice, Page ID # 448 | 12 |
| RE 142 | Notice, Page ID # 453 | 12 |
| RE 143 | Motion to Strike, Page ID # 455-456 | 12 |
| RE 144 | Reply to Response, Page ID # 458-459 | 12 |
| RE 145 | Motion for Judgment, Page ID # 460 | 12 |
| RE 146 | Order, Page ID # 462-464 | 13 |
| RE 147 | Notice of Compliance, Page ID # 465 | 13 |
| RE 148 | Order, Page ID # 466-467 | 13 |
| RE 149 | Notice of Appeal (Interlocutory), Page ID # 468 | 13 |
| RE 150 | Order, Page ID # 471 | 13 |
| RE 151 | Order, Page ID # 472-473 | 13 |
| RE 152 | Notice, Page ID # 474 | 13 |
| RE 153 | Notice of Appeal, Page ID # 476 | 13 |
| RE 155 | Order, Page ID # 480-481 | 13 |
| RE 156 | Order of the Sixth Circuit, Page ID # 482-483 | 13-14 |
| RE 157 | Mandate of USCA, Page ID # 486 | 14 |

## DESIGNATION OF DISTRICT COURT RECORD, Continued     Page(s)

| | | |
|---|---|---|
| RE 158 | Order, Page ID # 487-488 | 14 |
| RE 159 | Order of the Sixth Circuit, Page ID # 489 | 14 |
| RE 160 | Order of the Sixth Circuit, Page ID # 491 | 14 |
| RE 161 | Notice of Filing, Page ID # 493 | 14 |
| RE 162 | Motion to Set Hearing, Page ID # 496-497 | 14-15 |
| RE 163 | Order, Page ID # 499 | 15 |
| RE 164 | Response to Order by USA, Page ID # 500-503 | 15 |
| RE 165 | Response to Order by M. Heard, Page ID # 504-505 | 15 |
| RE 166 | Letter, Page ID # 506 | 15 |
| RE 167 | Motion for Evidentiary Hearing, Page ID # 509 | 15 |
| RE 168 | Mandate of USCA, Page ID # 512 | 15 |
| RE 169 | Minute Entry for Motion Hearing, Page ID # 514-515 | 15 |
| RE 170 | Order, Page ID # 516 | 15 |
| RE 171 | Minute Entry for Telephonic Status Conference, Page ID # 517-518 | 15-16 |
| RE 172 | Notice of Filing Regarding Actual and Attempted Discovery, Page ID # 519-521 | 16 |
| RE 173 | Letter, Page ID # 522 | 16 |
| RE 173-2 | Response letter from Clerk, Page ID # 525 | 16 |

## DESIGNATION OF DISTRICT COURT RECORD, Continued     Page(s)

| RE 174 | Letter, Page ID # 526 | 16 |
|--------|-----------------------|----|
| RE 174-2 | Response letter from Clerk, Page ID # 529 | 16 |
| RE 175 | Notice and Order, Page ID # 531 | 16 |
| RE 177 | Order, Page ID # 533 | 16 |
| RE 179 | Motion for Withdrawal of Request, Page ID # 535-536 | 17 |
| RE 180 | Notice of Compliance with Order, Page ID # 538-541 | 17 |
| RE 184 | Minute Entry for Pretrial Conference, Page ID # 555-556 | 17 |
| RE 185 | Order, Page ID # 557-558 | 17 |
| RE 186 | Opinion and Order, Page ID # 559-560 | 17 |
| RE 187 | Minute Entry for Jury Trial, Page ID # 561 | 17-18 |
| RE 188 | Minute Entry for Jury Trial, Page ID # 562 | 18 |
| RE 192 | Amended Minute Entry for Jury Trial, Page ID # 607 | 18 |
| RE 201 | Order, Page ID # 624-625 | 18 |
| RE 204 | Motion for New Trial, Page ID # 632-633 | 18 |
| RE 205 | Motion for Acquittal, Page ID # 638-639 | 18 |
| RE 206 | Motion/Information Request Regarding Judicial Notice, Page ID # 642 | 18 |
| RE 207 | Preliminary Order of Forfeiture, Page ID # 645-649 | 18 |

**DESIGNATION OF DISTRICT COURT RECORD, Continued**   **Page(s)**

| | | |
|---|---|---|
| RE 208 | Order, Page ID # 651-658 | 18 |
| RE 209 | Motion for Order to Plea of Jurisdiction, Page ID # 659-660 | 19 |
| RE 210 | Waiver of Standby Counsel at Presentence Report, Page ID # 663 | 19 |
| RE 211 | Order, Page ID # 666 | 18-19 |
| RE 213 | Preliminary Judgment of Forfeiture, Page ID # 672-674 | 19 |
| RE 215 | Opinion and Order, Page ID # 677-683 | 19 |
| RE 216 | Minute Entry of Sentencing, Page ID # 684 | 19 |
| RE 218 | Judgment in a Criminal Case, Page ID # 686-692 | 1, 19 |
| RE 219 | Notice of Appeal, Page ID # 693-695 | 1, 19 |
| RE 220 | Presentence Investigation Report, Page ID # 706-739 | 21 |
| RE 228 | Transcript of Pretrial Conference, Page ID # 1624-1682 | 47, 49-55 |
| RE 229 | Transcript of Trial, Vol. 1A, Page ID # 1683-1791 | 20-22, 55 |
| RE 230 | Transcript of Trial, Vol. 1B, Page ID # 1792-1861 | 55 |
| RE 231 | Transcript of Trial, Vol. 2, Page ID # 1862-2072 | 20-22 |
| RE 232 | Transcript of Trial, Vol. 3, Page ID # 2073-2275 | 21-23 |
| RE 233 | Transcript of Trial, Vol. 4, Page ID # 2276-2365 | |

**DESIGNATION OF DISTRICT COURT RECORD, Continued   Page(s)**

| | | |
|---|---|---|
| RE 235 | Transcript of Sentencing, Page ID # 2435-2454 | 19 |
| RE 240 | Transcript of Competency Hearing, Page ID # 2524-2535 | 28-30, 33, 35-45 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed electronically this7th

day of October, 2013, and  that one true and correct copy of the foregoing has been

sent by mail to: Marquis Deron Heard, USM # 14904-032, United States Penitentiary

- McCreary, P.O. Box 3000, Pine Knot, Kentucky 42635.

Respectfully submitted,

by: /s/ Neal Gary Rosensweig

NEAL GARY ROSENSWEIG, P.A.
Attorney for Appellant
P.O. Box 814598
Hollywood, Florida 33081-4598
954-962-7720